UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

LOUIS A. MERCADO,

                Plaintiff,

    -vs-                        **No. 1:15-cv-00282-MAT**
                                  **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

───────────────────────────────

## I. Introduction

Represented by counsel, Louis A. Mercado ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying Claimant's application for Supplemental Security Income ("SSI").

## II. Procedural History

On June 27, 2011, Plaintiff, then twenty-three years old, applied for SSI, alleging disability beginning June 6, 2011, because of back problems, two dislocated knees, and torn knee ligaments from a car striking him as he walked. (T. 51, 142-47, 170, 173).[2] Plaintiff's application was denied on October 28, 2011

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

[2] Citations to "T." in parentheses refer to pages in the certified administrative transcript.

(T. 58-61), and he timely requested a hearing before an administrative law judge ("ALJ"). ALJ Curtis Axelsen held a hearing via video conference on May 28, 2013. (T. 35-50). On August 2, 2013, the ALJ issued a decision finding Plaintiff was not disabled. (T. 22-30). Plaintiff timely requested review of the ALJ's decision, and, on February 2, 2015, the Appeals Council denied review, leaving the ALJ's decision as the final agency decision. (T. 1-4). This action followed.

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court assumes the parties' familiarity with the facts of this case as set forth in the record and will not repeat them except as necessary. For the reasons set forth below, Plaintiff's motion is granted to the extent that the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings, and Defendant's motion is denied.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, *see* 20 C.F.R. § 416.971, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 27, 2011. (T. 24). At step two, the ALJ found that Plaintiff had the severe impairments of bilateral knee disorder, lumbar spine disorder, and anxiety disorder. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or

2

medically equaled the severity of a listed impairment (*Id.*). In particular, the ALJ considered Listings 1.02A (Major dysfunction of a joint(s) (due to any cause)); 1.04A (Disorders of the spine); and 12.04 (Affective disorders).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the following limitation: he can only engage in two to three step tasks. (T. 25). At step four, the ALJ found that Plaintiff had no past relevant work. (T. 28-29). At step five, the ALJ found, without consulting a vocational expert, that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (T. 29). Accordingly, the ALJ found that Plaintiff had not been under a disability since June 27, 2011, the date the application was filed. (*Id.*).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential

standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

Plaintiff makes the following arguments in support of his motion for judgment on the pleadings: (1) the ALJ erred by substituting his own "medical" judgment for that of Plaintiff's treating orthopedic surgeon regarding whether Plaintiff meets Listing 1.02A; (2) the ALJ erred by not properly evaluating the treating orthopedic surgeon's opinion regarding Plaintiff's physical RFC and failing to give good reasons to reject the opinion; (3) the ALJ erred in failing to consider Listing 12.05C in light of evidence that Plaintiff has an intellectual disability; and (4) the ALJ erred in failing to do a full and proper credibility assessment of Plaintiff as required under S.S.R. 96-7p and 20 C.F.R. § 416.929.

**A. Listing 1.02A**

Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating orthopedic surgeon, Dr. Gregg Nicandri, regarding whether Plaintiff met Listing 1.02A and substituted his own "medical" judgment when he observed Plaintiff to be walking "effectively" at the hearing. (T. 28). Defendant counters that the ALJ is responsible for the ultimate decision on whether Plaintiff is disabled and does not need to reconcile every piece of evidence

4

in the medical record. Moreover, Defendant contends, the ALJ did consider Dr. Nicandri's opinion and substantial evidence supports the ALJ's determination that Plaintiff could ambulate effectively pursuant to Listing 1.02A.

### 1. Requirements of Listing 1.02A

Listing 1.02 addresses the major dysfunction of a joint, which "is characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability), chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." 20. C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02 (effective through September 2, 2013). Listing 1.02 further provides that there must be "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *Id.*

Subsection A of Medical Listing 1.02 requires that the claimant's impairment involve "one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b." Section 1.02B2b explains that an inability to ambulate effectively "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Listing § 1.00(B)(2)(b)(1). Ineffective ambulation is further defined as an "insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that

5

limits the functioning of both upper extremities." *Id.* A person who ambulates effectively is "capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." Listing § 1.00(B)(2)(b)(2). Further, the person "must have the ability to travel without companion assistance to and from a place of employment or school." *Id.* However, "the ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.* Examples of ineffective ambulation include when a person is (1) unable "to walk without the use of a walker, two crutches or two canes," (2) unable to "walk a block at a reasonable pace on rough or uneven surfaces," (3) unable "to use standard public transportation," (4) unable to "carry out routine ambulatory activities, such as shopping and banking," and (5) unable to "climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*

It is Plaintiff's burden to "demonstrate that [his] disability [meets] 'all of the specified medical criteria.'" *Otts v. Comm'r*, 249 F. Appx. 887, 888 (2d Cir. 2007) (emphasis in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan*, 493 U.S. at 530. "If the claimed symptoms and medical evidence support the criteria described by a listing, the ALJ must give an explanation why a claimant does not meet or equal the listing."

*Brown ex rel. G.J.R. v. Astrue*, No. 12-CV-6231T, 2013 WL 2945685, at *5 (W.D.N.Y. June 14, 2013) (citing *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 52 (W.D.N.Y. 2002)). If the ALJ does not provide reasons for rejecting a listed impairment, the Court may look to other parts of the decision and credible evidence in the record to determine if the rejection was supported by substantial evidence. *See Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) ("[I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). However, if the reviewing court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ[,]" *id.*, remand is generally required, *id.* (citations omitted).

### 2. Dr. Nicandri's Listing 1.02A Opinion

On September 27, 2012, Dr. Nicandri issued an opinion specifically with regard to Plaintiff's limitations in connection with Listing 1.02A. (T. 432-34). Dr. Nicandri found that Plaintiff satisfied the requirements of Listing 1.02A, in that Plaintiff had a major dysfunction of two major weight-bearing joints characterized by gross anatomical deformity, chronic joint pain and stiffness, and signs of limitation of motion. (T. 433). Dr. Nicandri also indicated that Plaintiff's joint dysfunction is confirmed by findings or appropriate, medically acceptable imaging.

7

(T. 433). With regard to the inability to ambulate effectively, Dr. Nicandri opined that Plaintiff (1) cannot walk a block at a reasonable pace on rough or uneven surfaces; (2) cannot use standard public transportation; (3) cannot carry out routine ambulatory activities including grocery, clothes shopping and banking; (4) cannot climb several stairs at a reasonable pace with use of only a single hand rail; and (5) needs an assistive device (a cane) to ambulate. (T. 434).

In his decision, the ALJ discussed Dr. Nicandri's opinion as to whether Plaintiff was able to ambulate effectively pursuant to Listing 1.02A and accorded the opinion "no weight." (T. 28). The ALJ reasoned that the opinion was "not consistent with the record and contrasts sharply with the other evidence of record, which renders it less persuasive." (*Id.*). Specifically, the ALJ explained that Plaintiff's "primary care physician Dr. [Javeed] Mir examined [Plaintiff] in 2012 and noted that there were no abnormalities." (*Id.* citing Ex. 12F). The ALJ also noted that Plaintiff "was able to walk 'effectively' at the time of the hearing." (*Id.*).

The Court concludes that the ALJ erred with respect to the portion of his reasoning that discredited Dr. Nicandri's opinion based on his lay assessment via videoconference of Plaintiff's ability to "walk 'effectively' at the time of the hearing" and "walk in and out of the hearing room." (T. 27-28). The ALJ's observations amount to a variant of the disfavored "sit and squirm"

8

test.  *See Brown v. Commissioner of Social Sec.*, No. 06-CV-3174(ENV)(MDG), 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011) ("The 'sit and squirm' test has been rejected by the Second Circuit as impermissible, and observations by the ALJ of any sort shall be accorded only limited weight, 'since the ALJ is not a medical expert.'") (quoting *Spielberg v. Barnhart*, 367 F. Supp.2d 276, 282 (E.D.N.Y. 2005)).

Notwithstanding this error, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff failed to prove he cannot ambulate effectively. It was not improper for the ALJ to rely on the notes from primary care physician Dr. Mir that Plaintiff's physical examination in May 2012, revealed no functional deficits. (T. 440-41). Dr. Mir's examination of Plaintiff's upper and lower extremities revealed full strength, no sensory deficits, no instability, and a full range of motion. (T. 440). Dr. Mir concluded that Plaintiff had a "normal physical examination." (T. 441). Dr. Mir examined Plaintiff in October 2012, and his findings during Plaintiff's physical examination once again were normal. (T. 442-43). Dr. Mir noted that Plaintiff had full strength, no sensory deficits, no instability, and a full range of motion in his upper and lower extremities. (T. 442).

The ALJ found persuasive Plaintiff's testimony that, in spite of his severe knee injuries, he was not taking any medication at the time of the hearing. Plaintiff explained that he had been "weaned" off morphine because he abused it in the past, had a drug

9

related altercation because of it, and now coped with the pain by "stay[ing] at home." (T. 40, 48). An ALJ properly may consider "[t]he type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms[.]" 20 C.F.R. § 416.929(c)(3)(iv).

Plaintiff also stated that he could walk "two blocks/one-and-a-half blocks maybe," but only with his cane. (T. 41). Plaintiff's own admissions about the distance he could walk and the fact that he only used one cane do not support a finding that he cannot ambulate effectively. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(B)(2)(b)(2) ("the inability to walk a block at a reasonable pace on rough or uneven surfaces" is an example of inability to ambulate effectively); *Hilliard v. Colvin*, No. 13 CIV. 1942 AJP, 2013 WL 5863546, at *13 (S.D.N.Y. Oct. 31, 2013) (finding that claimant's knee impairment did not meet § 1.00(B)(2)(b)(2) because "the evidence clearly showed that she could ambulate effectively-she used only one cane (not two)").

The ALJ also noted that in November 2012, Plaintiff sought emergency care after he tripped, fell, and developed pain in his left foot, but x-rays revealed that his foot was "completely normal." (T. 27, 447). The record also indicates that Plaintiff walked into the emergency room that day, and was discharged with a sprained foot; there is no indication he was unable to walk despite having a sprained foot. In sum, Plaintiff has failed to establish

10

that he meets all of the criteria of Listing 1.02A, in particular that he cannot ambulate effectively.

### B. Plaintiff's RFC and the Treating Physician Rule

Plaintiff also argues that the ALJ failed to give good reasons for discounting Dr. Nicandri's March 2012 Medical Source Statement opining, *inter alia*, that Plaintiff could never stoop. Defendant contends that the ALJ properly considered Dr. Nicandri's Medical Source Statement and discounted portions inconsistent with other evidence in the medical record. Defendant also argues that Plaintiff's contention is otherwise moot because substantial evidence in the medical record supports Plaintiff's RFC for sedentary work.

Pursuant to the Commissioner's regulations in effect at the time of the ALJ's decision, a treating source's opinion will be accorded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 416.927(d)(2) (effective through March 26, 2017). If an ALJ does not accord controlling weight to a treating source's opinion, an ALJ must consider a number of factors, including the length and nature of the treating source's relationship with the claimant, the extent to which the medical evidence supports the treating source's opinion, whether the treating source is a specialist in the area on which he or she is opining, the consistency of the treating source's opinion with the rest of the

11

record, and any other factors "which tend to support or contradict the opinion." 20 C.F.R. § 416.927(c)(1)-(6). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 416.927(d)(2)); *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243; emphasis in *Blakely*).

Here, Dr. Nicandri issued a medical source statement on March 13, 2012. (T. 427-30). Dr. Nicandri found that Plaintiff was not restricted in sitting, could lift and carry only 10 pounds, could walk and stand for less than two hours in an eight-hour workday, could not use his lower extremities to push or pull, and could never climb, balance, kneel, crouch, crawl or stoop (T. 427-28).

12

The ALJ accorded "great weight" to Dr. Nicandri's opinion finding no limitations in sitting, but noted that "[t]here is no objective evidence in the record that claimant cannot engage in postural activities." (*Id.*).

Here, the ALJ does not give any indication that he considered the factors set forth in 20 C.F.R. § 416.927, apart from the alleged lack of supportability of the opinion by objective findings. That could have been remedied by the ALJ ordering Plaintiff to undergo a consultative physical examination or by requesting clarification from Dr. Nicandri. Dr. Nicandri was Plaintiff's treating orthopedic surgeon responsible for his knee surgeries and treatment beginning with his June 2011 onset through at least 2012, and was therefore qualified to opine on whether Plaintiff could perform postural activities involving his lower extremities. (T. 232-46, 356-97, 427-30, 432-34). Defendant argues that the ALJ's rejection of Dr. Nicandri's opinion on Plaintiff's postural limitations is harmless because the ALJ "correctly noted that 'postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work.'" (Defendant's Brief at 13 (quoting T. 28; citing SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996))). This is

partially true, but the ALJ neglected to mention that SSR 96-9p also provides that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, *is required* in most unskilled sedentary occupations." SSR 96-9p, 1996 WL 374185, at *8 (emphasis added). Furthermore, "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply[.]" *Id.*

Thus, the Court cannot conclude that the ALJ's error in weighing Dr. Nicandri's opinion was harmless. *See, e.g.*, *Zabala*, 595 F.3d at 410 (error is harmless only if there is "no reasonable likelihood" that proper consideration of the evidence would have changed the ALJ's determination). As Defendant admits, neither Dr. Nicandri's medical opinion nor any other medical opinion in the record directly corresponds to Plaintiff's RFC. If, however, the ALJ had credited Dr. Nicandri's opinion that Plaintiff could "never" stoop, there is a reasonable likelihood that the ALJ would have found Plaintiff disabled because "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." S.S.R. 96-9p, 1996 WL 374185, at *8. However, it is not possible for the Court to make that determination at this juncture. Remand is required so that the ALJ can obtain clarification from Dr. Nicandri regarding his opinion as

to Plaintiff's ability to stoop, and to reweigh Dr. Nicandri's opinion in light of the applicable factors. In addition, the ALJ is directed to have Plaintiff undergo a consultative physical examination. Depending on the postural limitations assigned by the ALJ, reformulation of Plaintiff's RFC may be required. Finally, at step five, the ALJ is instructed to consult a vocational expert if necessary. *See* S.S.R. 96-9p, 1996 WL 374185, at *8 ("Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.").

### C. Listing 12.05C

Plaintiff further contends that the ALJ erred by failing to consider Listing 12.05C despite evidence that Plaintiff met all of the requirements. Specifically, Plaintiff notes that he had an IQ score of 69, suffered from the severe physical impairments found by the ALJ, and had deficits in adaptive functioning evidenced by his attending special education classes and his parents receiving SSI benefits on his behalf as a disabled child. Defendant responds that Plaintiff's impairments do not satisfy the criteria of Listing 12.05C. In particular, Defendant argues, Plaintiff has failed to show he has deficits in adaptive functioning or that his intellectual functioning is worse than borderline.

In order to be found disabled based on intellectual disability under Listing 12.05C, a claimant "must prove: (1) that he satisfies

15

the definition provided for in the introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A, B, C, or D." *Antonetti v. Barnhart*, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, § 12.00A). The introductory paragraph of Section 12.05 states that "[intellectual disability] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (effective through September 2, 2013). A claimant who meets the introductory paragraph's criteria then must satisfy the parameters set forth in 12.05C, by demonstrating (1) a "valid verbal performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* §12.05(C). Thus, in order to meet Listing 12.05C's requirements, Plaintiff must show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Initially, the Court notes that Defendant does not dispute that Plaintiff has met the third requirement of a severe impairment

16

based on the ALJ's findings that Plaintiff had three severe impairments. (T. 24). Thus, the only issue is whether Plaintiff has significantly subaverage general intellectual functioning with deficits in adaptive functioning and a valid verbal performance or full scale IQ of 60 through 70. If Plaintiff does not meet both of these requirements, Plaintiff is not disabled under Listing 12.05C.

### 1. Adaptive Functioning

"Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007)) (internal quotation marks omitted). For example, a claimant shows that they do not suffer from deficits in adaptive functioning if they are "able to satisfactorily navigate activities such as liv[ing] on [one's] own, tak[ing] care of . . . children . . . without help . . . [such that] they have not been adjudged neglected, pay[ing] bills, and avoid[ing] eviction." *Talavera*, 697 F.3d at 153. A claimant's effectiveness in areas of social skills, communication, and daily living skills, also illustrate adaptive functioning. *Id.; see also* Listing § 12.00(C)(1) (adaptive activities include cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office).

Here, the ALJ's decision includes no specific discussion of Listing 12.05C or adaptive functioning. However, the absence of an express rationale does not prevent this Court from upholding the ALJ's step-three determination, because portions of the ALJ's decision and the evidence before him show that substantial evidence supports this determination. *See Berry*, 675 F.2d at 469. There is substantial evidence in the record that Plaintiff does not have the types of deficits in adaptive functioning contemplated by Listing 12.05. The Court recognizes that Plaintiff's educational records show that his intellectual functioning was characterized as borderline, and that he participated in special education classes. (T. 27, 163-64, 166). Nevertheless, consultative psychologist Dr. Kevin Duffy opined that Plaintiff's mental impairments were not significant enough to interfere with his ability to function on a daily basis, his cognitive functioning was only somewhat below average, and he did not diagnose him with an intellectual disability. (T. 27, 399-401). Dr. Duffy further opined that Plaintiff could follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; make appropriate decisions; relate adequately with others; generally deal appropriately with stress; and manage funds in his own best interest. (T. 27, 400-01).

### 2. Plaintiff's IQ

Plaintiff also argues that he has met the second requirement of Listing 12.05C by showing that he had a qualifying performance IQ score of 69. He argues, in the alternative, that the ALJ also failed to fill the gap in the record of further intelligence testing based on the fact that Plaintiff's only IQ score was stale.

Here, the ALJ noted that Plaintiff had low IQ scores but did not accord them significance because Plaintiff "work[ed] at jobs, roofing and supermarket stocking, that require performing repetitive two and three step tasks," only stopped because of physical problems, and did not mention his mental limitations in his disability application documents. (T. 27, 173). Plaintiff's concedes that his IQ test from 2003, a decade before the ALJ's hearing, is not current for accurate assessment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00 (providing that "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above"). Plaintiff urges that the ALJ should have ordered a new round of intelligence testing. Plaintiff also points out that his June 2011 Disability Determination and Transmittal lists "learning disorder" as an additional impairment. (T. 28-29, 51). Although the ALJ apparently did overlook the mention of a learning disorder in one of the application documents, the Court finds that the record otherwise does not warrant remand for renewed intelligence testing, because

19

Plaintiff has failed to demonstrate the requisite deficits in adaptive functioning initially manifesting before age 22.

### D. The Court Declines to Reach Plaintiff's Remaining Argument

Having found remand necessary on the basis of the ALJ's error in weighing Dr. Nicandri's March 2012 Medical Source Statement, the Court declines to address Plaintiff's argument that the ALJ failed to do a full and proper credibility assessment.

## VI. Conclusion

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order. The Commissioner's motion for judgment on the pleadings is denied.

The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   December 11, 2017
         Rochester, New York.